1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF WYOMING

3    ----------------------------------------------------------------

4    UNITED STATES OF AMERICA,          Case No. 15-CR-00057-F

5             Plaintiff,                Cheyenne, Wyoming
                                        April 27, 2015
6             vs.                       9:02 a.m.

7    ANDREW LAMBERT SILICANI,

8             Defendant.                **CERTIFIED COPY**

9    ----------------------------------------------------------------

10

11

                   TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS
12
               BEFORE THE HONORABLE NANCY C. FREUDENTHAL
13                  CHIEF UNITED STATES DISTRICT JUDGE

14

15   APPEARANCES:

16   For the Plaintiff:       MR. THOMAS A. SZOTT
                              Assistant United States Attorney
17                            UNITED STATES ATTORNEY'S OFFICE
                              P.O. Box 668
18                            Cheyenne, WY 82003

19   For the Defendant:       MR. JAMES H. BARRETT
                              Assistant Federal Public Defender
20                            OFFICE OF THE FEDERAL PUBLIC DEFENDER
                              214 West Lincolnway
21                            Suite 31-A
                              Cheyenne, WY 82001
22

23   Court Reporter:          MS. JULIE H. THOMAS, RMR, CRR
                              2120 Capitol Avenue, Room 2228
24                            Cheyenne, WY 82001
                              (307)778-0078   CA CSR No. 9162
25

     Proceedings recorded by mechanical stenography,
     transcript produced by computer.

 1        (Proceedings commenced 9:02 a.m.,

 2        April 27, 2015.)

 3            THE COURT:  Please be seated.

 4            COURTROOM DEPUTY:  In criminal matter Case

 5   No. 15-CR-57-1F, United States of America versus Andrew

 6   Lambert Silicani, set today for a change of plea hearing,

 7   Counsel, please state your appearances.

 8            MR. SZOTT:  Thomas Szott for the United States.

 9            MR. BARRETT:  Jim Barrett for Mr. Silicani, Your

10   Honor.

11            THE COURT:  Mr. Barrett, are we here in anticipation

12   of a change of plea?

13            MR. BARRETT:  We are, Your Honor.

14            THE COURT:  If you and your client will please step

15   forward, we will get him sworn in.

16            COURTROOM DEPUTY:  Mr. Silicani, if you would please

17   raise your right hand.

18        (The defendant was sworn.)

19            COURTROOM DEPUTY:  Thank you.

20            THE COURT:  Can you please state your full name.

21            THE DEFENDANT:  Yes, Your Honor.  Andrew Lambert

22   Silicani.

23            THE COURT:  Mr. Silicani, I asked the courtroom

24   deputy to please swear you in.  I'll have a set of questions

25   to address with you.  It's important that you respond to my

1   questions truthfully.  Failure to do so could result in later

2   prosecution for perjury or false swearing.  Do you understand

3   that?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Good.  If you have any questions as we go

6   along, please speak up.  This is the best time to get any

7   questions answered.  If I don't know the answer, I'll see if

8   someone here in the courtroom might know the answer.  If you

9   need to talk to your attorney for any reason, just let me

10  know.  You can step away from the microphone and have a

11  private discussion.

12         Will you let me know as we go along if you have

13  questions for me or need to talk to your attorney?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Good.  Where were you born, Mr. Silicani?

16         THE DEFENDANT:  I was born in Chattanooga, Tennessee,

17  Your Honor.

18         THE COURT:  And how old are you?

19         THE DEFENDANT:  I am 23, Your Honor.

20         THE COURT:  How far did you go in school?

21         THE DEFENDANT:  I graduated high school, Your Honor.

22         THE COURT:  Did you take any post high school courses

23  or certificated classes?

24         THE DEFENDANT:  No, Your Honor.

25         THE COURT:  And what have you done for employment?

1  Have you had employment after high school?

2            THE DEFENDANT:  Uh, no, Your Honor.

3            THE COURT:  All right.  Have you been treated

4  recently for any mental illness or addiction?

5            THE DEFENDANT:  Uh, no, Your Honor.

6            MR. BARRETT:  Not recently, Your Honor.

7            THE COURT:  Not recently.

8            MR. BARRETT:  He has been treated in the past.

9            THE COURT:  All right.  Do you have -- from past

10  treatment has anyone suggested to you any sort of diagnosis

11  for any mental health disease or disorder?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  And what would that be?

14            THE DEFENDANT:  Bipolar type I, ADHD, and severe

15  anxiety.

16            THE COURT:  Are you taking any medication for any of

17  those conditions?

18            THE DEFENDANT:  Not currently, Your Honor.

19            THE COURT:  All right.  Are you under the influence

20  of any drug or alcohol for any condition whatsoever?

21            THE DEFENDANT:  No, Your Honor.

22            THE COURT:  All right.  I've got a copy of an

23  Indictment, which is a charging document.  It's not proof of

24  guilt or evidence of any kind.  Have you had an opportunity to

25  read and discuss the charges in this Indictment with your

1    attorney, Mr. Barrett?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  And are you fully satisfied with the

4    advice and representation that you have received today from

5    your attorney?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  All right.  I want to address the counts

8    in the Indictment to make sure that you fully understand what

9    you've been charged with and the potential sanctions should

10   you choose to enter a plea of guilty.  I've been advised to

11   expect a plea, but we're not to that point yet.  That will be

12   your choice.  Do you understand?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  And before we get to the charges in the

15   Indictment, has anyone threatened you or threatened anyone

16   that you care about in order to encourage you to consider

17   entering a plea of guilty today?

18           THE DEFENDANT:  No, Your Honor.

19           THE COURT:  All right.  All counts in the Indictment

20   are felony counts.  Do you understand and appreciate that?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  As felony counts, if this is your -- if

23   this is your first adjudication of a felony, that will have an

24   immediate consequence.  It will deprive you of the right to

25   own or possess firearms or ammunition.  You won't be able to

1   vote, serve on a jury or a grand jury.  You won't be able to

2   run for public office.  If you're here in the United States

3   without legal status, and I understand that you were born in

4   the United States, but, nonetheless, if you were here in the

5   United States without legal status, as an alien to the United

6   States it would have a consequence on your right to remain

7   here in the United States free of deportation.

8           Do you understand that these are felony counts that

9   we're here to address?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  Let's talk about what you've

12  been charged with.  The first charge is and all charges relate

13  to the use of a -- well, let's just address Count 1.

14          Count 1 deals with the charge that on or about

15  December 29th, 2014, here in the District of Wyoming and

16  possibly elsewhere, you used the mail with the intent that the

17  murders of your mother and stepfather be committed in

18  violation of the laws of the State of Wyoming as consideration

19  for a promise and agreement to pay things of pecuniary value,

20  to wit:  cash proceeds of your mother's life insurance policy.

21          Do you understand what you have been accused of in

22  Count 1?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Count 2 is a similar accusation only it

25  deals with conduct that alleges that the Government has

1    alleged occurred on or about January 13th, 2015.  Again, the

2    conduct as alleged occurred here in the District of Wyoming,

3    perhaps elsewhere.  The accusation is that you used the mail

4    with intent that the murders of your mother and stepfather be

5    committed in violation of the laws of the State of Wyoming as

6    consideration for a promise and agreement to pay things of

7    pecuniary value, to wit:  cash proceeds of your mother's life

8    insurance policy.

9         Do you understand what you have been accused of in

10   Count 2?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  Count 3 is a similar accusation only the

13   conduct alleged is on or about January 29th, 2015, again in

14   the District of Wyoming and elsewhere.  The accusation is that

15   you used the mail with the intent that the murders of your

16   mother and stepfather be committed in violation of the laws of

17   the United States as consideration for a promise and agreement

18   to pay things of pecuniary value, again, your mother's life

19   insurance policy.

20        Do you understand that accusation?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  The next accusation deals with conduct on

23   or about February 18th, 2015, again in the District of Wyoming

24   and elsewhere.  The accusation is that you used the mail with

25   intent that the murders of your mother and stepfather be

1   committed in violation of the laws of the State of Wyoming as

2   consideration for a promise and agreement to pay things of

3   pecuniary value, again, cash from your mother's life insurance

4   policy.

5            Do you understand the accusation in Count 4?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  Let's talk about the potential penalties.

8   We've already talked about the potential penalties should you

9   be adjudged guilty of a felony.  Do you have any questions

10  about these as felony counts?

11           THE DEFENDANT:  No, Your Honor.

12           THE COURT:  All right.  The counts carry with them

13  statutory penalties.  We'll address those first.  Each count

14  carries its own statutory penalty.  In terms of time in

15  custody, the range is from zero to 10 years in custody.  For

16  all four counts that would be zero to 40 years.  So that's the

17  authority that I have for sentencing, a maximum of 40 years, a

18  minimum of zero.

19           There's a possibility of a fine.  I don't impose

20  fines people can't afford to pay, but a fine could be a

21  consequence of your choosing to plead guilty to these counts.

22  The range for a fine is zero, no fine at all, if I consider

23  that you are unable to afford to pay a fine, to as much as

24  $250 [sic] per count.  So for all four counts cumulatively the

25  authority that I have in terms of imposing a fine ranges from

1   zero to as much as a million dollars.

2          Do you understand the potential for a fine?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  The next consequence is time on

5   supervised release, which means after you serve time in

6   custody you will be released to supervision by an officer of

7   the Court.  The Office of Probation and Pretrial Services

8   performs our supervision.  The term of supervision is three

9   years.  That groups together, so that would be the maximum

10  term of supervision for all counts.  There would be conditions

11  imposed on your supervision.  These conditions are orders of

12  the Court that you comply with certain requirements.  There

13  could be a mental health condition, for example, that you

14  obtain a mental health evaluation and comply with treatment,

15  including taking medication if ordered or recommended.  There

16  is often a search condition.  So if our probation officers

17  believe that you may be in violation by possessing contraband

18  or dangerous weapons, they can order that you comply with a

19  search.  There's the typical conditions of reporting regularly

20  to the probation officer, keeping the officer informed of your

21  whereabouts.  There may be a condition that requires you to

22  either work or volunteer so that you are gainfully employed or

23  go to school.

24          We're not here to establish the conditions of

25  supervision.  I talk about them with some specificity to

1    impress upon you that supervision is a punishment.  To be

2    supervised by someone at your age is a sanction associated

3    with this offense conduct.  It also can help you transition

4    into a more useful life, so there are benefits as well.

5           If you violate your conditions of supervision, such

6    as refusing to go to mental health treatment or refusing a

7    search or whatever, you can be arrested, brought back to court

8    to answer for the accusation.  If I find that you are in

9    violation of your conditions of supervision, I can sentence

10   you to additional time in custody apart from the time in

11   custody associated for the offense conduct we're here to

12   address today.

13          Do you understand supervised release as I've

14   explained it to you?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  The next sanction is a $100 special

17   assessment.  This assessment is imposed without consideration

18   of your ability to pay.  All monetary obligations are due

19   immediately, so this $400 special assessment for all counts

20   would be due and payable at sentencing.  If you have no money

21   to pay it then, you will be required to pay it over time

22   either while you're in custody or during your term of

23   supervised release, with the obligation that you satisfy these

24   monetary sanctions before the supervision term ends.

25          Do you understand the $100 per count special

1    assessment?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Any questions about these possible

4    consequences of choosing to plead guilty to the four counts

5    that we're here discussing today?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  Have you and your attorney discussed the

8    advisory sentencing guidelines and how they may apply to you

9    in this case?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  Good.  The prosecutor has filed a

12   prosecutor's statement that provides the Court with some

13   information on how they expect you might guideline in the

14   federal system.  Frankly, I don't know much about you, so I'm

15   not sure about whether their guideline calculation is accurate

16   or not.  It may be that you guideline below what they have

17   written up in that statement or above what has been written up

18   in that statement.  So that's not any assurance to you about

19   how you would guideline in the federal system, and I can't

20   tell you specifically how that guideline would be until after

21   the sentencing investigation occurs.  Do you understand that?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  All right.  The important thing about the

24   guideline system is really twofold.  First of all, how it

25   operates.  How it operates is that it looks at the severity of

1   the crime charged.  That severity of the crime, its

2   circumstances and the severity, is gauged by offense level.

3   So the higher the offense level, all other things being the

4   same, the longer any guideline range sentence is.

5          The next major consideration is your past criminal

6   history.  Criminal history is scored by convictions, with

7   felonies scoring greater than other offense conduct such as

8   misdemeanors.  Your criminal history will be investigated, and

9   that score will be derived, and you'll be placed in a Criminal

10  History Category based upon past criminal convictions.  Again,

11  like the offense level, the higher the category, all other

12  things being the same, the longer the guideline range sentence

13  is.

14         So that's generally how the guidelines work.  There

15  are aggravating and mitigating factors, but the main drivers

16  in the system, if I can use that word, is your past criminal

17  convictions and the severity of the offense gauged by offense

18  level.  So those things come together to recommend a sentence

19  range to the Court.

20         I must correctly calculate the guidelines in your

21  case and consider that guideline range.  For the, what's

22  referred to as the heartland of cases, that's a pretty good

23  indication of the sentencing range.  However, I can and

24  sometimes do vary or depart away from that sentencing range to

25  establish a sentence that I believe is sufficient but not

1   greater than necessary to punish you for the offense conduct.

2   I always focus on the worst-case scenario, not to indicate

3   that's what I'll do, but to impress upon you my authority in

4   the context of the guidelines.  I'm not bound to issue a

5   guideline sentence.  I must consider one, but I can depart or

6   vary.  On a worst-case scenario, I can depart or vary within

7   that guideline range or above it.  That could result, in most

8   people's estimation, in a sentence that's more severe than

9   what they may be anticipating.  It's my experience people tend

10  to focus on that low number or hope for even better, but to

11  impress upon you before you enter your plea what I can do, I

12  can vary or depart above the low end or above the range

13  altogether.  I can't be arbitrary.  I must put my reasons on

14  the record for why I believe the sentence that's given in your

15  case, again, meets that overarching objective of a sentence

16  sufficient but not greater than necessary.

17          Do you generally understand the guideline system and

18  my authority in the context of looking at a guideline sentence

19  and departing or varying from it?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Do you have any questions for either me

22  or your attorney on the guidelines as you stand here today?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  All right.  And given the prosecutor's

25  statement on the guideline range, I think it's fair to say

1   that you will be looking at time in custody.  Because of this

2   I always advise defendants that in the federal system there is

3   no early release through parole.  Parole systems operate in

4   some states to give offenders an opportunity to get out early

5   by serving a part of their sentence but not the full sentence

6   imposed.  In the federal system there's no board of parole

7   entity that you can write or -- and you certainly can't write

8   me under my current authority to get out early.  You might be

9   released early through good time credits, but that's a program

10  operated by the Bureau of Prisons.  It's not paroled early.

11          Do you understand that there is no early release in

12  the federal system through parole?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Now, at the time of sentencing if you

15  believe the sentence that I state is procedurally or

16  substantively wrong, too severe, that there's some error in my

17  consideration of the sentencing factors, those sorts of

18  reasons, please let your attorney know.  He can file a notice

19  of appeal and have the reviewing court, the Tenth Circuit,

20  look at my decisions and rule on the points of error that your

21  attorney brings up.  But you only have a limited time to get

22  that best review on appeal.  You only have 15 days from the

23  date of sentencing or the date of judgment, let me say, to

24  file that notice of appeal and, again, get your best chance

25  for review before the Tenth Circuit.  Do you understand that?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  And will you let your attorney know at

3    sentencing if you want him to file a notice of appeal and

4    pursue your rights of review?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  Good.  Now, at this time I've been

7    advised to anticipate a guilty plea, but you haven't entered

8    one yet.  I want to make sure that you understand and fully

9    appreciate your right and all the constitutional rights

10   attendant to taking this case to trial.

11          The first right is that you can take this case to

12   trial.  That's the default for all charged offenses is to go

13   to trial.  For felony cases you have a trial before a jury.

14   You're protected under the Speedy Trial Act to get the case to

15   trial consistent with your speedy trial rights.  So the

16   charges just can't languish out there with the Government

17   working on its case over and over.  The Government must be

18   prepared to bring this case to a speedy, public trial.

19          The first day of trial is jury selection.  We'll call

20   people from around Wyoming as prospective jurors.  We seat

21   them in the jury box over there, 12 individuals to start with,

22   and we ask them questions.  I ask questions as well as the

23   attorneys.  The point of questioning prospective jurors is to

24   determine whether they have a bias or prejudgment concerning

25   this case or this type of case, you, any of the attorneys, the

1    state of the law.  These are the sorts of things that can

2    raise bias or prejudgment.  Maybe they've read something about

3    the case.  Perhaps they know one of the attorneys or some

4    witness to be called.  If they can't set aside their bias or

5    prejudgment, we'll excuse them for cause.  If the attorneys,

6    looking at the jury panel, believe that some jurors are just

7    not well suited, they can excuse those jurors up to a set

8    number for really no reason.

9          So we ask jurors questions to figure out bias or

10   prejudgment to determine how they might perform their duties

11   as jurors because you and the Government are both entitled to

12   a fair and impartial jury panel.  That panel is 12 individuals

13   plus an alternate.  We question the jurors sometimes multiple

14   days to assure that we're satisfied at the end of the jury

15   selection process that we have the best jury impaneled to be

16   fair and impartial judges of the facts.  That's usually what

17   criminal trials are all about, judging the facts and applying

18   the facts, as they judge them, to the law as I give them.  I

19   play no role in judging the facts, which is why jury selection

20   is so very important.

21         After we impanel the jury, the next phase of the case

22   involves evidence presentation.  The Government goes first in

23   that phase because the Government has the burden of proof.

24   You have no burden to prove that you are innocent or not

25   guilty.  The Government carries the burden of proof or not,

1   and the burden never shifts to you.  The Government seeks to

2   carry its burden of proof through witnesses or things, calling

3   witnesses, for example, moving to introduce evidence into the

4   record.

5        You'll have the right to have your attorney present

6   throughout the course of trial.  Your attorney can confront,

7   cross-examine, all witnesses called by the Government, make

8   objections to things the Government seeks to introduce that

9   your attorney believes are not admissible under the Federal

10  Rules of Evidence.  The burden of proof, as you may know, most

11  people know it through popular culture by television or

12  movies, is proof beyond a reasonable doubt.  That is an

13  elevated burden of proof.  It's not proof beyond all doubt,

14  but the evidence, the witnesses' statements and the testimony

15  admitted, must firmly convince the jury of your guilt before

16  the jury can return a verdict of guilty.

17       You have the right to a unanimous verdict.  So if

18  even one juror concludes that the Government has not carried

19  that elevated burden of proof, the jury could not return a

20  verdict of guilty.

21       You have the constitutional right to remain silent

22  and not help the Government with its burden of proof, which

23  means you don't have to take the witness stand to tell your

24  side of the story or to explain your conduct.  This right

25  makes sense because you have no burden of proof, but most

 1   importantly it's assured to you under the Constitution that

 2   the Government cannot compel you to help them.

 3            Do you understand that if you go forward and plead

 4   guilty to the charges that have been brought against you that

 5   there will be no jury called in this case, no jury trial?  Do

 6   you understand that?

 7            THE DEFENDANT:  Yes, Your Honor.

 8            THE COURT:  And do you understand that I'll be the

 9   only judge here?  So I'll be required to judge the facts,

10   which means that I need to hear about the facts.  I can't just

11   take a plea of guilty without a factual basis.  I must be

12   assured that you are, in fact, guilty before I can accept a

13   plea of guilty.  Do you understand that?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  And do you understand that that

16   essentially eliminates your right to remain silent because you

17   must address the charges or have your attorney address them?

18   Or I could turn to the Government and have the Government

19   address them, and then I still will have to ask you if you

20   disagree.  In short, I must hear about the charges, so you

21   can't just stand on your right not to help establish the

22   factual basis.  Do you understand that?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  Any questions at this point?

25            THE DEFENDANT:  No, Your Honor.

1           THE COURT:  And also -- well, I've talked about the

2   Government's burden of proof and how you need not help them,

3   you need not take the stand.  You can, if you wish, put on

4   your own case.  And if witnesses are not here to answer

5   questions that you want to present to them, I would subpoena

6   them so that they are here for the trial.  Do you understand

7   that right as well?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  All right.  Let me talk again about what

10  you have been charged with because these -- the Indictment

11  really contains the elements of the offense conduct.  Again, I

12  can't take a guilty plea without these elements being

13  addressed to my satisfaction.

14          All counts contain some common elements.  The

15  different elements which create the four counts is the time

16  frame alleged for the conduct.  So on Count 1 the time frame

17  alleged is on or about December 29th.  The Government need not

18  prove that time exactly or precisely, but they must be

19  reasonably close through their proof.

20          The next element is that some conduct had to occur

21  here in the District of Wyoming.  Other things could have

22  occurred elsewhere.

23          The next element involves you and not somebody else.

24          The next element is that you used the mail, which is

25  an interstate commerce facility, that you used that mail with

1   the intent that the murders of your mother and stepfather be

2   committed in violation of the laws of the State of Wyoming,

3   and that that was done with the intent that the murders be

4   committed as consideration for a promise and agreement to pay

5   things of pecuniary value, to wit:  cash proceeds of your

6   mother's life insurance policy.

7            Now, most of the elements are common in Counts 1

8   through 4.  The different element in each count is the time

9   frame.  In Count 2 the time frame alleged for the same

10  essential offense conduct of using the mail intending that the

11  murders be committed for pecuniary value is that that conduct

12  occurred on or about January 13th of 2015.  Count 3, that

13  conduct as alleged by the Government occurred on or about

14  January 29th, 2015.  And the last count is that the offense

15  conduct as I've described it occurred on or about

16  February 18th, 2015.

17           Do you understand the elements as I've explained

18  them?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  All right.  Mr. Barrett, how do you wish

21  to proceed with the factual basis?

22           MR. BARRETT:  Your Honor, I believe Mr. Silicani is

23  able to provide a factual basis.  Before that happens I would

24  like to raise one other issue and perhaps a subissue, and that

25  is that Mr. Silicani's plea here today is being made, of

1    course, under oath, and he is incriminating himself by doing

2    so and providing a factual basis.  Mr. Silicani, through the

3    intermediary of the United States Attorney's Office, has been

4    threatened with potential prosecution in the state courts, and

5    if that were to occur this plea and the statements made here

6    by him today could be used against him in that prosecution.

7    And I think he needs to understand that as well before he

8    enters the plea.  I believe he does, but I want to make that a

9    matter of record.

10        The other matter being that, in spite of that threat,

11   one of the elements as stated here in this prosecution is that

12   Mr. Silicani committed these offenses by using the mail with

13   the intent that certain matters occur in violation of the laws

14   of the State of Wyoming, which to me raises issues that will

15   have to be dealt with in the state court, perhaps federally as

16   well, surrounding matters of double jeopardy since this is

17   also in violation of state law as well as the federal mail

18   statutes.

19        So with that, those understandings on the record, you

20   understand those things, Andrew?

21        THE DEFENDANT:  Yes, Your Honor.  Yes.

22        MR. BARRETT:  If Mr. Silicani is prepared, we're

23   certainly ready to enter the pleas and enter the factual

24   basis.

25        THE COURT:  Mr. Silicani, do you understand the

1   statements made today could and perhaps will be used against

2   you in other proceedings, for example, in proceedings, if any,

3   brought by the State of Wyoming for conduct which violates

4   state law?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  And has anyone made any promise or

7   assurance to you which might be considered an inducement to

8   you entering a plea of guilty today?

9            THE DEFENDANT:  No, Your Honor.

10           MR. BARRETT:  Quite the contrary, Your Honor.  As a

11  matter of fact, there was an offer made -- and I suppose that

12  should be on the record, too.  We did have a plea agreement

13  entered by the United States offering an 11(c)(1)(C) sentence

14  to 35 years.  That agreement, should it have been carried

15  through on, carried with it an implicit understanding or

16  promise that Mr. Silicani would not be prosecuted on the state

17  level.  And so having reviewed that and discussed that with

18  counsel, Mr. Silicani has rejected that proposed agreement and

19  appears here today entering a cold plea.

20           THE COURT:  All right.  Anything from the Government

21  concerning either the advisement, the sufficiency of the

22  advisement, or any of the colloquy the Court's had with the

23  defendant?

24           MR. SZOTT:  No, Your Honor.  Thank you.

25           THE COURT:  All right.  Anything further,

1  Mr. Barrett, before I invite your client to state the facts

2  concerning these counts?

3          MR. BARRETT:  No, Your Honor.

4          THE COURT:  All right.  Any questions, Mr. Silicani?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  All right.  Okay.  Well, why don't you

7  tell me what happened which resulted in these charges being

8  brought against you.

9          THE DEFENDANT:  Yes, Your Honor.  Uh, I used the

10  mail, wrote four letters and, uh, asking for this to be done,

11  for the murders of my mom and dad -- stepdad.  I understand

12  what I've, what I've done.  I felt that pleading guilty would

13  be best, so . . .

14          THE COURT:  And do you have an idea of when these

15  letters were mailed?

16          THE DEFENDANT:  Yeah.  Yes, Your Honor.  Um, on

17  December -- on or about December 29th, 2014, on or about

18  January 13th, 2015, on or about January 29th, 2015, and on or

19  about February 18, 2015, Your Honor.

20          THE COURT:  All right.

21          MR. BARRETT:  We know these matters through review of

22  discovery in the case, Your Honor.

23          THE COURT:  Okay, good.  And where were you when you

24  wrote these letters?

25          THE DEFENDANT:  I was incarcerated in the Wyoming

1  State Penitentiary, Your Honor.

2         THE COURT:  And that Wyoming State Penitentiary, was

3  it the one in Rawlins or Torrington?

4         THE DEFENDANT:  Rawlins, Your Honor.

5         THE COURT:  All right.  And to the best of your

6  recollection, were the letters addressed to any particular

7  state or location or city, or where were they sent?

8         THE DEFENDANT:  They were addressed to, uh, Drake &

9  Associates in Colorado, Your Honor.

10        THE COURT:  All right.  And you intended the letters

11 to be for the purpose of inviting someone to commit murders of

12 your mother and stepfather; is that right?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  And why were you interested in that to

15 occur?

16        THE DEFENDANT:  Your Honor, I at the time -- I mean,

17 it was for the life insurance policy, Your Honor.  Um,

18 I -- sorry.  I'm not good at talking.  Your Honor, it was for

19 that.  Obviously it was, you know, big error in judgment

20 obviously.  And, you know, I'd take it back if I could, you

21 know.

22        THE COURT:  Were you a beneficiary under the policy,

23 a secondary after your stepfather?

24        THE DEFENDANT:  Yes, Your Honor.

25        THE COURT:  And in terms of Drake & Associates, what

 1  did you promise them?

 2          THE DEFENDANT:  Uh, I think, Your Honor, around

 3  150,000, Your Honor.

 4          THE COURT:  So you hoped to get the cash proceeds and

 5  then pay the murder-for-hire entity; is that right?

 6          THE DEFENDANT:  Yes, Your Honor.

 7          THE COURT:  Anything else, Mr. Barrett?

 8          MR. BARRETT:  Not at this time, no, Your Honor.

 9          THE COURT:  Anything from the Government?  I do have

10  the prosecutor's statement which sets forth, from my

11  understanding, the narrative from the letters, and I'll

12  consider that also in the change of plea proceedings.

13          MR. SZOTT:  Your Honor, I believe it's sufficient.

14  Thank you.

15          THE COURT:  All right.  Thank you, Mr. Szott.

16          Are you ready for me to ask you how you now plead?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  And I'll take these count by count so the

19  record is clear.

20          As to Count 1, which charges you with the use of

21  interstate commerce facilities in the commission of

22  murder-for-hire, how do you now plead to that count, guilty or

23  not guilty?

24          THE DEFENDANT:  Guilty, Your Honor.

25          THE COURT:  As to Count 2, which charges you with the

15-CR-00057-F            Change of Plea          04/27/2015   26

1   use of interstate commerce facilities in the commission of

2   murder-for-hire, how do you now plead to that count?

3           THE DEFENDANT:  Guilty, Your Honor.

4           THE COURT:  As to Count 3, which charges you with the

5   use of interstate commerce facility in the commission of

6   murder-for-hire, how do you now plead to that count?

7           THE DEFENDANT:  Guilty, Your Honor.

8           THE COURT:  As to Count 4, which charges you with use

9   of interstate commerce facilities in the commission of

10  murder-for-hire, how do you now plead to that count?

11          THE DEFENDANT:  Guilty, Your Honor.

12          THE COURT:  It is the finding of the Court in the

13  case of United States of America versus Andrew Lambert

14  Silicani, Docket 15-CR-57, that the defendant is fully

15  competent and capable of entering an informed plea, that the

16  defendant is aware of the nature of the charges brought

17  against him and the consequences of pleas of guilty to the

18  charges and the consequences of that plea, and that the plea

19  of guilty to Counts 1 through 4 of Docket 15-CR-57 is a

20  knowing and voluntary -- are knowing and voluntary pleas

21  supported by an independent basis of fact which is sufficient

22  to satisfy each of the essential elements of the charges as

23  brought against the defendant.  The plea is, therefore,

24  accepted, and the defendant is now adjudged guilty of these

25  four counts.

 1            I'd like to set sentencing for July 6th at

 2    10 o'clock.  Between now and July 6th a presentence

 3    investigation will be undertaken by an officer of the Court.

 4    Mr. Tom Fitzgerald is here to your left.  He works for

 5    Probation and Pretrial Services, which is a service to the

 6    Court.  He may have some questions for you.  He might have

 7    some forms for you to complete.  You do have the right to have

 8    your attorney present during questioning by the Probation

 9    Office.  The presentence investigation covers a wide range of

10    topics, including your background and upbringing, your marital

11    status, whether you have any dependents, your education, your

12    work history, any issues with drug use or abuse or alcohol use

13    or abuse, your mental health history, your physical health

14    history.  Your criminal convictions will be investigated, and,

15    if any, they will be scored for purposes of the guideline

16    calculation.  The offense conduct will also be investigated by

17    looking at the prosecutor's statement as well as discovery

18    made available.

19            After that investigation is concluded, a draft report

20    is written containing that and other topics.  That draft

21    report is circulated to the attorneys.  You'll have an

22    opportunity to read and discuss that draft report with your

23    attorney.  Please let Mr. Barrett know if you see any

24    discrepancies, errors, or omissions.  He can file objections

25    and seek to have the report corrected or clarified.  It's

1   important that you are satisfied with the information in the

2   report in terms of its accuracy.  That report can be accessed

3   by people other than me.  The Bureau of Prisons, as an

4   example, can access that report, use information in it for

5   purposes of classification or designation to facilities for

6   purposes of making decisions about programs that might best

7   suit you.  The probation officer can also access the report

8   for your term of supervised release and, again, make decisions

9   concerning programs.  That report is important to me for

10  sentencing not just for making a decision about time in

11  custody but also the conditions of supervision.  So the report

12  has a lot of uses, and that's why I emphasize that it's

13  important that you are comfortable with its accuracy.

14          After objections or requests for correction are

15  filed, a final report is written.  Again, it's sent to the

16  attorneys and me.  You'll have a chance to read and discuss

17  that final report before sentencing.  At sentencing we'll be

18  here in this same courtroom on or about July 6th.  You do have

19  the right to a timely sentencing, and so the sentencing won't

20  just be deferred with no reason.  Occasionally, though, I do

21  have to move sentencings around so that they work better in

22  the Court's calendar if I've got trials or other conflicts,

23  and so it may change a bit but, again, consistent with your

24  timely right of sentencing.

25          Sentencing will be an open proceeding, and so if

1    you've got anyone that you want to be here for sentencing,

2    they're welcome to attend.  They're welcome to speak on your

3    behalf.  If they can't attend or aren't comfortable coming to

4    the proceeding, Mr. Barrett can collect letters and submit

5    them to the Court for my review.

6            At sentencing I'll hear from the attorneys.  They'll

7    talk about the presentence investigation.  I'll put the

8    guideline calculation on the record.  I'll make any rulings on

9    legal or factual issues that are still outstanding.  I'll

10   state the guideline range derived from that calculation.  I'll

11   then invite the attorneys to make their statements on what the

12   sentence should be.  I typically invite your attorney to speak

13   first, then the Government's attorney, and then your attorney

14   can have essentially the last word if there's anything else he

15   wants to say in response to the Government's statement.

16           After the attorneys have spoken I'll invite victims

17   or others that are in the gallery that wish to be heard on

18   sentencing.  I'll then invite you to make any statement that

19   you wish to make.  That's your right.  You're not

20   obligated -- compared to today, you're not obligated to make a

21   statement, but I do encourage people to consider making

22   statements to talk to their attorney about what, if anything,

23   that they should say.  I often find what the defendants say at

24   sentencing to be the most compelling or persuasive statements.

25           After I hear from you, if there's anything that you

 1  wish to say, I'll make my decision on what the sentence should

 2  be.  Then I'll state it on the record.  That sentence is then

 3  reduced to a written judgment.  It's that written judgment

 4  from which your attorney can appeal.  Again, that time frame

 5  is short, so let your attorney know if you want to seek

 6  review.

 7          Do you have any questions about the presentence

 8  investigation or the draft or final report that's written?

 9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  Do you have any questions concerning the

11  sentencing, where it will be, when it will be, the process

12  that I tend to follow in terms of focusing on the report and

13  then inviting the attorneys and others to make statements?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  All right.  Is there anything that we

16  should address before we conclude this proceeding?

17          MR. BARRETT:  Your Honor, I'm sorry for extending

18  this matter, but I need to make sure the record is clear here.

19  This is a serious case.  In each charge -- and the

20  prosecutor's statement outlines the elements.  In each of

21  these counts the fifth element recited is that these mailings

22  were done with the intent that the murders of his mother and

23  stepfather be committed in violation of the laws of the State

24  of Wyoming.  I believe Your Honor might have made some

25  reference to that, but I also believe that that hasn't been

1   sufficiently addressed and would ask, if they're able to do

2   so, that the United States specify which, if any, laws would

3   have been violated by the commission of these acts so that we

4   can either adopt that, and I'm sure we will accept that

5   representation, or not.  But it seems to me to be lacking at

6   this point, and it also seems to me to be an important

7   element.

8           THE COURT:  All right.  Yes, you're correct in terms

9   of that, tying down that last fifth element.

10          Mr. Szott, I'd invite the Government to supplement

11  concerning the murder-for-hire charge and the fifth element in

12  the counts.

13          MR. SZOTT:  May I have just a moment, Your Honor?

14          THE COURT:  Yes.

15          Would you like to have a seat, Mr. Silicani?

16          THE DEFENDANT:  I'm all right, Your Honor.

17          THE COURT:  All right.  Let me know if you'd like to

18  sit down.

19          THE DEFENDANT:  Thank you, Your Honor.

20          MR. BARRETT:  Maybe we could get some paperwork

21  signed, Your Honor --

22          THE COURT:  Sure.

23          THE DEFENDANT:  -- during this break.

24          THE COURT:  Yeah.

25          MR. BARRETT:  Thank you, Your Honor.

1          MR. SZOTT:  We are prepared to proceed, Your Honor.

2    Thank you.

3          THE COURT:  Thank you.

4          MR. SZOTT:  Your Honor, regarding the fifth element

5    of the charged offense as set forth in the prosecutor's

6    statement, I'd like to turn just first to the language of the

7    statute, which is 18 U.S. Code Section 1958(a).  The statute

8    reads:  Whoever travels in or causes another, including the

9    intended victim, to travel in interstate or foreign commerce

10   or uses or causes another, including the intended victim, to

11   use the mail or any facility of interstate or foreign commerce

12   with intent that a murder be committed in violation of the

13   laws of any state or the United States -- and then the statute

14   continues from that point.

15          The issue of murder in violation of the laws of the

16   State of Wyoming refers, Your Honor, to the murder that was

17   intended to be committed.  That reference to state law does

18   not refer to any state charge that Mr. Silicani might, in

19   fact, have also committed, for example, solicitation of

20   murder.  The intent must have been that the murder or, I

21   should say, the murder that was intended to be committed must

22   have been a murder that would be in violation of the laws of

23   the state.

24          I will cite the Court to section 6-2-101(a) of the

25   Wyoming Statutes Annotated.  This is murder in the first

1   degree.  And section 6-2-101(a) reads as follows:  Whoever

2   purposely and with premeditated malice -- and then I will put

3   an ellipses here because there's some irrelevant language --

4   but whoever purposely and with premeditated malice kills any

5   human being is guilty of murder in the first degree.

6            So, Your Honor, the evidence in this case is that

7   Mr. Silicani corresponded with Drake & Associates intending

8   that Drake & Associates murder his mother and stepfather in

9   exchange for a promise to pay money for his mother's life

10  insurance policy.  That murder, if committed, would have been

11  in violation of section 6-2-101(a), that is, it would have

12  been first degree murder, the killing of any human being

13  purposely and with premeditated malice.

14           So that is the Government's supplementation on that

15  element, Your Honor.

16           THE COURT:  Mr. Barrett.

17           MR. BARRETT:  Well, we would accept that that's

18  certainly one of the state statutes, Your Honor.  I don't

19  believe it's any potential state statute dealing with murder

20  or that it encompasses them all, but I think it's sufficient

21  at least as a minimal basis to satisfy that element at this

22  time.

23           THE COURT:  So the state has supplemented with

24  the -- or the Government has supplemented with the felony

25  murder statute, 6-2-101, and with that supplementation the

1    Court concludes the factual basis is satisfied.

2          MR. BARRETT:  Thank you, Your Honor.

3          THE COURT:  Thank you.  Anything else, Mr. Barrett?

4          MR. BARRETT:  No, Your Honor.

5          THE COURT:  Anything else, Mr. Szott?

6          MR. SZOTT:  Your Honor, I guess just to avoid any

7    confusion, and I'm not sure there is any, but I guess I would

8    just ask, since the defense raised the issue, for at least an

9    agreement that had these murders been committed, it would have

10   been murder in violation of the laws of the State of Wyoming.

11         MR. BARRETT:  It certainly would have been in

12   violation of some law of the State of Wyoming.  We were just

13   trying to clarify that for the purposes of this plea only and

14   not for future proceedings.

15         THE COURT:  Well, that element, as I understand it,

16   is an intent element, and the defendant discussed his -- two

17   intents, his first intent that the murders be committed and

18   the second intent that the murders be committed in

19   consideration for a promise and agreement to pay things of

20   pecuniary value, the life insurance policy.  And the Court is

21   satisfied that the reference to the felony murder statute is

22   sufficient in terms of the element that speaks to violating

23   the laws of the State of Wyoming.

24         MR. SZOTT:  Thank you, Your Honor.

25         THE COURT:  All right.  With that, we will stand in

1  recess until call.

2          MR. BARRETT:  Thank you.

3      (Proceedings concluded 9:56 a.m.,

4      April 27, 2015.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3

4            I, JULIE H. THOMAS, Official Court Reporter for the

5    United States District Court for the District of Wyoming, a

6    Registered Merit Reporter and Certified Realtime Reporter, do

7    hereby certify that I reported by machine shorthand the

8    proceedings contained herein on the aforementioned subject on

9    the date herein set forth, and that the foregoing pages

10   constitute a full, true and correct transcript.

11           Dated this 27th day of August, 2015.

12

13

14

15                     /s/ Julie H. Thomas

16                     JULIE H. THOMAS
                      Official Court Reporter
17                   Registered Merit Reporter
                    Certified Realtime Reporter
18                      CA CSR No. 9162

19

20

21

22

23

24

25