FILED
United States Court of Appeals
Tenth Circuit

May 27, 2016

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANDREW LAMBERT SILICANI,

    Defendant - Appellant.

No. 15-8051
(D.C. No. 1:15-CR-00057-NDF-1)
(D. Wyo.)

_____

ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ**, and **MORITZ**, Circuit Judges.
_____

    Defendant Andrew Lambert Silicani pleaded guilty in the United States District Court for the District of Wyoming to four counts charging the use of interstate-commerce facilities in the commission of murder-for-hire. *See* 18 U.S.C. § 1958. The court sentenced him to 420 months' imprisonment. He appeals, challenging his sentencing on two grounds. First, he contends that the district court abused its discretion in failing to sua sponte order a hearing under 18 U.S.C. § 4244 to assess whether he should have been hospitalized rather than imprisoned. Second, he argues that his above-guidelines

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sentence was substantively unreasonable. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I. **Hearing Under 18 U.S.C. § 4244**

A familiar component of criminal proceedings is a hearing to determine whether the defendant is competent to stand trial, plead guilty, or be sentenced. *See* 18 U.S.C. § 4241. Less familiar is the practice codified in § 4244 to determine whether a convicted defendant's mental disease or defect may require treatment in a facility other than prison. Subsection 4244(a) permits a defendant to request a hearing on the matter and authorizes the court to sua sponte set such a hearing. It provides:

> A defendant found guilty of an offense, or the attorney for the Government, may, within ten days after the defendant is found guilty, and prior to the time the defendant is sentenced, file a motion for a hearing on the present mental condition of the defendant if the motion is supported by substantial information indicating that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility. The court shall grant the motion, or at any time prior to the sentencing of the defendant shall order such a hearing on its own motion, if it is of the opinion that there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility.

*Id.* § 4244(a). Under § 4244(b) the court may order a mental examination of the defendant before the hearing. After the hearing the court may commit the defendant to the custody of the Attorney General for hospitalization for care or treatment if "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect and that he should, in lieu of being sentenced to imprisonment, be committed to a suitable facility for care or treatment . . . ." *Id.* § 4244(d). The

"commitment constitutes a provisional sentence of imprisonment to the maximum term authorized by law for the offense for which the defendant was found guilty." *Id.* If the director of the facility later certifies that the defendant has sufficiently recovered from the disease or defect that care and treatment in the facility is no longer necessary, the court may proceed to sentencing if the provisional sentence has not expired. *See id.* § 4244(e).

Defendant did not request a § 4244 hearing in district court; but he argues that the court should have ordered one sua sponte. Before addressing the merits of that argument, we consider what our standard of review should be. Nearly always, when an issue has not been raised in district court, we review only for plain error. *See United States v. Smith*, 815 F.3d 671, 675 (10th Cir. 2016). Under that standard of review we reverse the district court's decision "only if (1) the district court committed an error, (2) the error is clear at the time of the appeal, (3) the error affects substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

Defendant, however, argues that we should apply the same abuse-of-discretion standard as if he had requested the district court to conduct a hearing. He points out that in *United States v. Williams*, 113 F.3d 1155, 1160 (10th Cir. 1997), we reviewed for abuse of discretion a district court's failure to sua sponte order proceedings under 18 U.S.C. § 4241 to determine a defendant's competency to stand trial, and he contends that the same rule should apply to § 4244 proceedings. We are not persuaded.

In *Williams* we did not specifically address what our standard of review should be or mention the possibility of plain-error review; so we would not ordinarily consider that

3

opinion binding precedent on the issue. In any event, we emphasized the constitutional importance of determining competency because trial of an incompetent defendant would violate fundamental notions of due process. *See Williams*, 113 F.3d at 1160–61. Defendant cites no comparable due-process interest here. We do not doubt that constitutional standards could be violated by keeping a duly convicted person in prison when another institution would be needed because of the prisoner's mental defect or disease. But it is not obvious that the Constitution requires a procedure to *predict* that no prison will be able to treat the convicted person adequately, particularly when, as here, there is nothing to indicate that a constitutional violation has occurred while the defendant has been incarcerated for several years. Moreover, in the competency context an appellate court may be reluctant to hold that an incompetent defendant could forfeit his rights (and therefore be relegated to plain-error review), so plain-error review could be justified only if the appellate court were to assume an affirmative answer to the very question to be resolved—whether the defendant was competent. Here, however, Defendant's competency is not contested. We see no reason to depart from the general rule that we review unpreserved issues only for plain error.

We are buttressed in our determination regarding the standard of review by noting that other circuits have applied plain-error review to the failure of a district court to sua sponte order a § 4244 hearing. *See United States v. Czubaj*, 85 F. App'x 477, 479 (6th Cir. 2004); *United States v. Lizama*, 13 F. App'x 738, 740 (9th Cir. 2001). The only contrary case cited by Defendant is not persuasive because the court focused almost entirely on the district court's failure to sua sponte conduct a competency hearing (an

4

issue that perhaps cannot be forfeited) and, in any event, held that there had been no abuse of discretion, so the standard of review was not a critical issue. *See United States v. Lindsey*, 339 F. App'x 956, 963 (11th Cir. 2009) (per curiam).

Turning to the merits, we must decide whether the district court plainly erred in failing to conduct a hearing to determine whether Defendant was "suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4244(a). We focus on the second element of plain-error review: whether the district court violated law that was clearly established at the time. "An error is *clear* when it is contrary to well-settled law." *Smith*, 815 F.3d at 675 (internal quotation marks omitted). "For us to characterize a proposition of law as well-settled, we normally require precedent directly in point from the Supreme Court or our circuit or a consensus in the other circuits." *Id.*

On its face the statutory standard would appear to be satisfied only if Defendant had a mental disease or defect and the mental disease or defect could not be adequately treated in a prison. We acknowledge that two courts and at least one commentator have suggested that there may be other circumstances in which the statute requires that the defendant not be imprisoned, but such limited authority can hardly establish clear law. *See United States v. Abou-Kassem*, 78 F.3d 161, 165 (5th Cir. 1996) (§ 4244 furthers "the governmental interests in (1) protecting mentally ill prisoners who might be at substantial risk if placed in the general prison population; (2) ensuring the safety of other inmates; and (3) providing humanitarian treatment for mentally ill inmates"); *United States v. Jensen*, 639 F.3d 802, 805 (8th Cir. 2011) (same); Daniel A. Krauss & Alan M.

5

Goldstein, *The Role of Forensic Mental Health Experts in Federal Sentencing Proceedings*, in *Forensic Psychology* 359, 377–78 (Alan M. Goldstein ed., 2007) ("The main issue in [§ 4244] evaluations is not only the severity of the mental illness from which the defendant suffers, but also how well the mentally ill defendant can adapt to prison society at a standard federal prison facility.").

The record here fails to establish that the error, if any, was clear. There is certainly adequate evidence in the presentence report that Defendant suffers from a mental disease or defect. As early as the age of three he experienced fits of rage during which he would break items and damage the floors and walls of his home. At the age of four he was diagnosed with attention deficit hyperactivity disorder and conduct disorder, also known as oppositional defiant disorder. He was first hospitalized at the age of seven after a fit of rage in which his eyes became glazed over and he appeared ready to stab his mother with a pair of scissors. In the fourth grade he had a "melt down and kicked his teacher in the head." Presentence Report (PSR), R. Vol. 2 at 91 (PSR at 13). Thereafter, he was diagnosed with bipolar disorder. He continued to experience behavioral problems and receive mental-health treatment throughout his childhood. More recently his 2012 Wyoming presentence report indicated that he suffered from attention-deficit hyperactivity disorder, bipolar disorder, polysubstance abuse, and cannabis dependence. Nevertheless, there is no evidence that there is necessary treatment for Defendant available in other institutions that is not available in federal prison. Defendant points to some of his misconduct while incarcerated in state prison (which, as far as the record before us shows, was not repeated during his five months of federal custody before

6

sentencing). He fails, however, to connect any of that misconduct to a specific mental disease or defect that could be adequately treated only in a facility other than prison.

## II. Substantive Reasonableness of the Sentence

Without the benefit of a plea agreement, Defendant entered a guilty plea to four counts of the use of interstate-commerce facilities with intent that murder for hire be committed. *See* 18 U.S.C. § 1958. The maximum penalty for each count is 10 years' imprisonment. *See id.* Under the sentencing guidelines his adjusted offense level was 39, and he received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 36. His criminal history placed him in category III, so his guidelines range was 235 to 293 months. The court varied upward and imposed a sentence of 420 months.

Defendant argues that his 420-month sentence is substantively unreasonable. "Substantive review involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1215 (10th Cir. 2008) (internal quotation marks omitted). We review for abuse of discretion. *See id.* at 1216. We "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* (internal quotation marks omitted).

In this case, "the nature and circumstances of the offense and the history and characteristics of [Defendant]," 18 U.S.C. § 3553(a)(1), are paramount (although they also affect related factors regarding the serious nature of the offense, just punishment,

7

deterrence, and protection of the public, *see id.* 3353(a)(2)). We summarize Defendant's offense and criminal history.

In late 2014, while incarcerated in a Wyoming prison on a state offense, Defendant solicited a fellow inmate's help in hiring a hitman to kill his mother and stepfather so he could collect on his mother's life-insurance policy. The "hitman" obtained by the other inmate was an undercover officer. During his conversations with the officer, Defendant also indicated that he would like to have his father murdered later on for his life insurance, house, and car. His mother and father were not his biological parents but had adopted him as a newborn. He expressed no complaints about how his mother had treated him but justified the murders to the undercover agent by saying, "it's not my blood," and "the money [would be] more of a help than they are right now." PSR at 8. He told the officer he did not care whether the two suffered in the course of the murder.

This offense was not an isolated incident during Defendant's adulthood. His Wyoming incarceration was for a brutal robbery he committed in early 2011, when he was 19. After he and his friends decided to randomly pick someone to rob, they came upon the victim roller blading. One of the friends turned to Defendant and said, "Get him." PSR at 11. Defendant exited the vehicle and proceeded to stab the victim at least six times. When he later confessed, he said that he thought he had killed the victim. He also admitted to an uncharged stabbing two weeks earlier when purchasing marijuana. He was sentenced to five to seven years' imprisonment.

While imposing sentence, the district court described Defendant as believing that his "violence is the answer for matters that are really even apparently unprovoked" R. Vol. 3 at 76. It said that the stabbing for which he was incarcerated in Wyoming "really indicated [] this continuing picture of callous disregard where [Defendant] stabbed someone so much, hoping to leave them dead, for no clear reason other than perhaps greed and a proclivity towards violence." *Id.* The court continued:

> [T]o see someone as young as you with such exceptionally callous, greedy, criminal-thinking personality is troubling. . . .
> . . .
>
> Your mother, who stood by you through the entire course of your life, . . . not only poured resources in terms of mental health resources, but even while you were in prison sent money and gifts, purchased items for you on demand. And to have this be the mindset that you come away with to plan such a heinous offense, really with no apparent interest in anything other than the greed and receiving money. For what? For a new car? For ten tattoos and drugs?
>
> To exchange a life for such juvenile desires is hard to comprehend. And to then express that you really don't care if there's suffering involved is even harder to comprehend. And to make matters worse, as though they could be worse, to talk about taking a similar action against your father, who I understand you've had issues with, but apparently he wasn't first on your list because you didn't know whether he had any resources that would ever come your way. I'm not sure. This to me is impossible, impossible to understand.
>
> So, considering the callous disregard that you've held toward other people for – for such a long time, the potential continuing danger that you present to society, with disordered ways of thinking that are very difficult to change and an approach that appears to lack explanation other than, again, a callous disregard for not just life but for those people that care and love you as you stand here today, and greed is – are factors that elevate this case beyond just a desire for punishment.

> I don't sit up here desiring to punish anyone. But you with the – with your mindset and your nature, your past history, the particular chilling nature of the offense warrants an upward variance . . . .

R. Vol. 3 at 76–78.

Defendant contends that the court improperly justified its upward variance by focusing on factors already accounted for in the sentencing guidelines. But "district courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory Guidelines range." *Alapizco-Valenzuela*, 546 F.3d at 1222. And it is clear from the record that the district court considered factors not taken into account by the guidelines, such as Defendant's desire to kill those who loved him and his "callous disregard" for others' lives.

He further argues that the court "turned a blind eye" to his lengthy mental-health condition that contributed to the offense. The record shows, however, that the court explicitly considered his mental-health record in fashioning its sentence.

We also reject Defendant's argument that the district court did not weigh the need to avoid unwarranted sentencing disparities. The court explicitly stated that "[t]his is an unusual case," R. Vol. 3 at 75, warranting a more severe sentence. In his brief to this court Defendant has not cited any evidence that similar defendants were sentenced more leniently.

We see no abuse of discretion in the district court's imposition of the lengthy sentence here.

### III. CONCLUSION

We AFFIRM the judgment of the district court.

Entered for the Court


Harris L Hartz
Circuit Judge

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| | | |
|---|---|---|
| Elisabeth A. Shumaker<br>Clerk of Court | May 27, 2016 | Chris Wolpert<br>Chief Deputy Clerk |

Mr. James H. Barrett
Mr. Grant Russell Smith
Office of the Federal Public Defender
District of Wyoming
214 West Lincolnway, Suite 31A
Cheyenne, WY 82001

Ms. Veronica S. Rossman
Office of the Federal Public Defender
Districts of Colorado and Wyoming
633 17th Street, Suite 1000
Denver, CO 80202

**RE:** **15-8051, United States v. Silicani**
Dist/Ag docket: 1:15-CR-00057-NDF-1

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 12 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc:        Thomas Andrew Szott

EAS/kf